[L. A. No. 1227.   In Bank.—May 18, 1904.]

KERN OIL COMPANY, Appellant, v. MRS. J. M. CRAW-
FORD, Respondent.

MINING CLAIMS—LOCATION OF PLACER CLAIM—LEGAL SUBDIVISION—
MARKING OF BOUNDARIES—MISTAKE.—Where the notice of location
of a placer mining claim on land surveyed by the government of the
United States called for a specified quarter-section of such land,
and in attempting to mark the boundaries thereof a mistake was
made in locating the quarter-section corners on one side of the
land so as to leave a strip thereon which was in controversy,
the stakes being marked for the quarter-section corners, the whole
quarter-section will be deemed to be included in the location.

ID. —BOUNDARIES OF GOVERNMENT SURVEY SUFFICIENT—CASE OVERRULED.
—In locating a placer claim under the laws of the United States,
where the notice of location calls for a legal subdivision, it is a
sufficient notice of its boundaries; and "the location is distinctly
marked on the ground" by the government survey thereof, "so
that its boundaries may be readily traced."   There need be no other
marking of boundaries of a placer claim so located.   (The case of
*White* v. *Lee,* 78 Cal. 593, is overruled.)

APPEAL from a judgment of the Superior Court of Kern
County and from an order denying a new trial.   J. W.
Mahon, Judge.

C. Linkenbach, and J. S. Chapman, for Appellant.

Laird & Packard, and W. A. Harris, for Respondent.

VAN DYKE, J.—When this case was in Department the
following opinion was rendered:—

"This action was brought to obtain an injunction against
the defendant restraining her from entering upon the land
in controversy, claimed by plaintiff under the laws of the
United States for the disposition and sale of mineral lands,
and also to restrain her from interfering with the rights of
plaintiff as owner of said land and mining claim.   The case
was tried before the court, findings filed, and judgment there-
upon entered for defendant.   Plaintiff made a motion for a
new trial, which was denied, and hence this appeal from the
order denying a new trial and from the judgment.   No ques-
tion is made as to the sufficiency of the evidence to sustain

the findings. We must therefore look to the findings in order to determine the correctness of the judgment. It appears therefrom that on the twenty-ninth day of May, 1899, the grantors of plaintiff, who were citizens of the United States, and duly qualified under the laws thereof to enter and locate mineral lands, entered upon the northeast quarter of section 32, township 28 south, range 28 east, M. D. M., with intent to locate the same as a placer mining claim. They posted a notice upon the said land, claiming the quarter-section as placer mining ground, and naming it the 'Dewey No. 4 Placer Mining Claim,' claiming it for petroleum, asphaltum, gypsum, and all other forms and deposits contained in and under said quarter-section. The notice was dated, complied with the law, and was recorded with the county recorder of Kern County on June 1, 1899. The locators, after posting and recording said notice, caused a survey to be made in order to mark the boundaries of their claim to the quarter-section. Stakes were set at the northeast, southeast, northwest, and southwest corners thereof. These stakes were 4 x 4 redwood posts, painted white and marked, the one at the northeast corner, 'N. E. corner section 32,' and the one at the southeast corner, 'S. E. corner section 32.' On a line between said two last-named stakes, the locators caused to be set several laths to mark the line, which was believed to be the east line of the quarter-section, and the east line of the claim. The boundary on the east, as so marked on the ground, could be readily traced. The said northeast quarter is and was public mineral land, and the locators discovered petroleum and placer mineral within the boundaries thereof. The said stakes marked 'N. E. corner section 32' was and is seventy-three feet west of the true northwest corner of the northwest quarter of section 33, and the stake marked 'S. E. corner section 32' was and is twenty-four feet west of the southwest corner of the northwest quarter of section 33. There was thus a strip of land east of the line marked by the locators as the east line of the quarter-section, running north and south the entire length of the quarter-section, and west of the true east line of the quarter-section, said strip being seventy-three feet wide at the north end thereof and twenty-four feet wide at the south end thereof. This strip is the land in controversy.

"The defendant was and is duly qualified to enter mining

claims, and a citizen of the United States. On the third day of March, 1900, she entered upon said strip of land, caused it to be surveyed and stakes set at the corners thereof for the purpose of marking its boundaries. She duly posted a notice of her location, describing the strip of land, and naming her claim 'Mountain View Placer Mining Claim.' She discovered petroleum oil and placer mineral on the said claim so located by her, and recorded her notice in the county recorder's office of Kern County. The main question presented for determination is whether, conceding that the law requires the boundaries of placer claims on surveyed lands to be marked, the original locators sufficiently marked their claims. Defendant is presumed to have had notice of the location made by plaintiff's grantors and the markings on the stakes. The stake painted white and marked 'N. E. corner of sec. 32' was not without meaning to defendant and her surveyor. And so of the stake marked 'S. E. corner sec. 32.' Particularly is this so when the notice claimed the quarter-section. It was only by having a survey made that defendant discovered that the stakes set by the original locators were west of the true line. While these stakes, if standing alone with no marks upon them, would indicate to defendant that they were intended to mark the easterly boundary of the claim, yet the very stakes themselves told her that the claim was intended to embrace the quarter-section to the east line thereof. And the notice told her the same thing. It was not reasonable for her to believe that the original locators did not intend to include the strip of land in their location. The United States had surveyed and marked the quarter-section by monuments, and an unintentional mistake in retracing the lines should not be held to be a waiver by the locators of the claim to the whole quarter-section. In *Duryea* v. *Boucher,* 67 Cal. 141, which was an action to determine the right of possession to ten acres of placer mining ground, the notice of location described the ten acres as 'the north half of the south half of the southwest quarter of the southeast quarter of the said section thirteen, being bounded on the south by the Old Squaw claim, on the east by the Clum ranch, on the north by the Paul claim, and on the west by unoccupied lands.' This notice erroneously described the land in the wrong government subdivision. This court held the

notice sufficient, and in the opinion said: 'As the claim was for thirty acres, its boundary on the west could be easily determined. It makes no difference that the wrong legal subdivisions are inserted in the notice. These may be rejected as false when the remaining description sufficiently identifies the land in accordance with the maxim, *Falsa descriptio non nocet cum de corpore constat.*' In *Doe* v. *Tyler,* 73 Cal. 21, all but one or two of the monuments to mark the boundaries of a mining location were placed over upon the adjoining land. It was held that the monuments were sufficient to identify the claim, and that the location was valid. In *Eilers* v. *Boatman,* 3 Utah, 159, 15 Morrison's Min. Rep. 462, the survey-stakes set by the locator were not on the line as surveyed for a patent. The court held the location sufficient, and in the opinion said: 'It is neither expected nor required that the locator of a mineral claim in marking his claim on the ground so that its boundaries can be readily traced shall be exact in running the lines, or in fixing the corner or other posts. It is rarely, if ever, that he has either the time or facilities for making an accurate survey, and a difference of three or four feet or a few points, as stated in this case, between the monuments fixed by an actual survey for a patent and those fixed at the time of location is immaterial, and does not affect the validity of the original location.' In *West Granite Mountain Mining Co.* v. *Granite Mountain Mining Co.,* 7 Mont. 356, where the marks made by the locator were not upon the ground, the supreme court of Montana said: 'It was certainly never intended that a slight mistake in the setting of stakes should invalidate a location. All that was intended is, that a person seeking to make a subsequent location could go upon the ground referred to, and from the marks made find the boundaries of the claim.' In *North Noonday Mining Co.* v. *Orient Mining Co.,* 1 Fed. 522, the jury was instructed that 'any marking on the ground claim, by stakes and mounds and written notices, whereby the boundaries of the claim located can be readily traced is sufficient.' This language was quoted with approval by this court in *Howeth* v. *Sullenger,* 113 Cal. 550. In the late case of *McKindley Mining Co.* v. *Alaska United Mining Co.,* 183 U. S. 570, the supreme court of the United States held in accord with the liberal doctrine announced in the cases quoted. There

the locator wrote the notices of location upon a stump or snag in the creek, as follows: '1, the undersigned, claim 1500 feet running down this creek, and 300 feet on each side.' It was held that the notices constituted a sufficient location. It is not necessary to quote further from the cases, as they are generally in accord with what has been said. The object of the statute as to marking the location, so that its boundaries can be readily traced, is to notify the public that the claim has been located and is claimed under the mining laws of the United States. Whatever is sufficient to give this notice does give it. Technical accuracy, either in the location of the stakes or in the wording of the notice, is not required. If a third party, intending to locate, can readily ascertain from what has been done by the prior locator the extent and boundaries of the claim so located, then the object of the statute has been accomplished. In this case the defendant had ample notice of the location of the quarter-section by plaintiff's grantors,—she knew what they intended to take. If they made a mistake as to the location as to the west line, it did not in any way injure defendant. She will not be allowed to take advantage of a mistake which in no way injured her. She knew she was attempting to locate land claimed by the original locator. It appears that defendant found the lines. She thought that the locators had not found them, and although she was told by the notice that the quarter-section had been located and entered, she acted upon her peril in regarding a portion of it as vacant.''

The Department opinion is adopted, and in addition to what is there said, and in answer to the petition for rehearing, we will discuss other points.

The statement in the former opinion that the stakes placed by appellants were marked, one ''N. E. corner section 32'' and one ''S. E. corner section 32,'' is taken from the findings made by the trial judge and cannot be questioned by respondent on this appeal.

The late case of *Oregon King Mining Co.* v. *Brown*, 119 Fed. 48, is in accord with the opinion of the Department. The case of *McKindley Creek Mining Co.* v. *Alaska United Mining Co.*, 183 U. S. 563, is followed by the United States circuit court of appeals, and in the opinion many authorities

are cited, and it is said: "The statute under and by virtue of which such locations are made does not say that the boundaries shall be indicated by physical marks or monuments, nor in any particular or designated manner. The requirement is that the location shall be so distinctly marked on the ground that its boundaries may be readily traced. (Sec. 2324, Rev. Stats. U. S.—U. S. Comp. Stats. 1901, p. 1426.) It has been many times decided that any marking on the ground, whether by stakes, monuments, mounds, or written notices whereby the boundaries of the location can be readily traced is sufficient." And, as the point is urged by appellant that it is not necessary to mark the boundaries of a placer claim upon the ground, where the location is of a legal subdivision upon surveyed lands, we will discuss the question.

The Revised Statutes of the United States (secs. 2319 et seq.) provide as.to the location of vein or lode claims. Section 2324 provides "the location must be distinctly marked on the ground so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

After the provisions fully covering vein or lode claims, section 2329 provides: "Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz, or other rock in place, shall be subject to entry and patent under like circumstances and conditions, and upon similar proceedings as are provided for vein or lode claims; but where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands." Section 2330 provides that legal subdivisions of forty acres may be subdivided into ten-acre tracts, and that joint entries may be made by two or more persons, but that no location "shall exceed one hundred and sixty acres for any one person or association of persons, which location shall conform to the United States surveys." Section 2331 provides: "Where placer claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required, and all placer claims located after the tenth day of May, 1872, shall conform as near as

practicable with the United States system of public surveys, and the rectangular subdivisions of such surveys, and no such location shall include more than twenty acres for each individual claimant.''

Section 2334 provides for the survey of mining claims, and ''the expenses of the survey of vein or lode claims, and the surveys and subdivision of placer claims into smaller quantities than one hundred and sixty acres, together with the cost of publication of notices, shall be paid by the applicants.'' It is thus seen that the system contemplates that a sale of placer claims will ordinarily be made by legal subdivisions. When a location is made according to legal subdivisions, no provision is made for surveying it again, for the evident reason that it is sold as per the survey that has already been made by the United States. The statute expressly provides that in such a case no further survey or plat shall be required. The purchaser takes it to the extent of its exterior boundaries as already established by the United States. His notice of location is a notice of its boundaries precisely as it would be in case of a homestead or pre-emption claim. There is no reason why the locator should be required to stake it out and mark its boundaries, nor does the statute require it. They have already been staked out and marked and cannot be changed. Any person seeing the notice could, by employing a surveyor, or otherwise, find the boundaries as easily as could the locator, and it evidently is the duty of such person to do so, in case he is interested in knowing where they are. The notice in this case stated to the world that the northeast quarter of section 32 had been located as a placer claim. The notice did not have to further state the boundaries of the quarter-section, nor did the locator have to place stakes or marks upon the ground to show to any one the lines of the quarter-section. He was no more required to do this than he was to take defendant around and show her the lines. As stated in the Department opinion, ''It appears that defendant found the lines. She thought that the locators had not found them, and although she was told by the notice that the quarter-section had been located and entered, she acted upon her peril in regarding a portion of it as vacant.'' The government survey of public lands is made by running and marking the lines of the townships and sections and by marking the

corners of the townships, sections, and quarter-sections, and a conveyance by reference to the legal subdivision refers as a matter of law to the monuments placed on the ground by the United States. (*Powers* v. *Jackson*, 50 Cal. 429; *Bullock* v. *Rouse*, 81 Cal. 591.) The construction herein placed upon the statutes as to placer claims is supported by the opinion of the assistant secretary of the interior department in an opinion dated March, 1896, (22 L. D. 408). He said, in speaking of placer locations: "It does not, in my judgment, mean that when the placer is located on surveyed lands it is necessary to mark the boundaries. There is no purpose that can be subserved by so doing. The public surveys are as permanent and fixed as anything can be in that line, and any fractional part of a section can be readily found and its boundaries ascertained by that method for all time to come, and is necessarily more stable and enduring than marking it by perishable or destructible stakes or monuments."

In *Temescal Oil etc. Co.* v. *Salcido*, 137 Cal. 212, it was held that the location of a placer claim was properly marked on the ground, and in the opinion it is said: "We are influenced somewhat in our consideration of the point by the fact that the notice of location which was posted and recorded described the claim by its government subdivision, the land having been already surveyed by the government, and that a government monument was still in place at one corner of the claim at the time of the location."

The case of *White* v. *Lee*, 78 Cal. 593,[1] is in conflict with what has here been said, and is overruled. That case, in our opinion, does not correctly interpret the statutes. It proceeds upon the theory that the "boundaries shall be distinctly marked on the ground." The requirements of section 2324 are not that the boundaries shall be distinctly marked on the ground, but "the *location* shall be distinctly marked on the ground so that its boundaries can be readily traced." The *location* here was distinctly marked on the ground, and its boundaries can be readily traced by any one who will follow the "exterior limits" of the quarter-section. *White* v. *Lee* has never been followed by this court, except perhaps in *Anthony* v. *Jillson*, 83 Cal. 298, where the point was not necessary to the decision in the latter case, and was *dictum.*

[1] 12 Am. St. Rep. 115.

We more readily reach this conclusion for the reason that our decision in the case at bar will not impair or invalidate any location made in conformity with *White* v. *Lee.* If the location and entry of any one has been made in conformity with the ruling in *White* v. *Lee,* it is valid under the ruling in this case, although more may have been done than was necessary.

The judgment and order are reversed and the court below directed to cause judgment to be entered on the findings in favor of plaintiff.

McFarland, J., Angellotti, J., Shaw, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.