[Civ. No. 525. Third Appellate District.—March 27, 1909.]

## F. H. GREEN et al., Appellants, v. JAMES GAVIN et al., Respondents.

APPEAL FROM JUDGMENT TAKEN TOO LATE—DISMISSAL.—An appeal from the judgment taken more than six months after its entry cannot be considered and must be dismissed.

MINING CLAIMS—VALIDITY OF LOCATION OF PLACER CLAIM—INARTIFICIAL NOTICE—PRINTED AND WRITTEN MATTER—LOCATION ON GROUND.—A notice of location of a placer mining claim, containing the printed words "Commencing at" and followed by the written words "The S. W. ¼ of the N. E. ¼ of Section 23, T. 14, R. 10 E., situate in the Brushy Mining District, County of Placer, State of California. This claim shall be known as the Canothus Placer Mining Claim," followed by the date of the location and the names of the locators, may be shown to have been clearly intended to locate the land described in writing, and that the same was actually located on the ground, from which it appears that the printed words were inadvertently left in, and the notice was not thereby vitiated.

ID.—UNNECESSARY FINDING—SUBSTANTIAL COMPLIANCE WITH LAW.—Although the evidence justified a finding that the printed words were left in, such a finding is immaterial, as a substantial compliance with the law was sufficiently shown, and no one could be prejudiced in consequence of the obvious oversight as to those words.

ID.—CONSTRUCTION OF LOCATION NOTICES—PURPOSE OF NOTICE.—Location notices should be liberally construed, having reference to the circumstances under which, and the character of the parties by which, they are generally made; and in determining the sufficiency of a location notice, the most important guide is the purpose of the notice, which is to identify the land claimed with reasonable certainty.

ID.—NOTICE A TEMPORARY PROTECTION—MARKING OF BOUNDARIES THE MAIN ACT OF LOCATION.—A notice of location is valuable chiefly as a temporary protection to the location, while the acts are performed under the laws of Congress, under which the main and necessary act of location is "distinctly marking the location on the ground so that its boundaries may be readily traced." When the location is thus marked, all that the notice and record were ever intended or expected to accomplish is effected in a manner far more satisfactory and complete.

ID.—COMPLIANCE WITH MINING CUSTOMS AND LAW OF POSTING NOTICE IMPORTANT—LOCATION CLARIFYING NOTICE.—While compliance with mining customs and with the requirement of the law as to the post-

ing of notices is important, and not to be disregarded, yet the whole question must be viewed in the light of the beneficent purpose of the regulations, and the acts performed by the parties in pursuance of the location notice must be considered if they tend to clarify and render certain what under the notice itself might be obscure or uncertain.

ID.—BOUNDARIES FULLY MARKED—TRESPASS UPON ACTUAL POSSESSION.—Where one of the locators built a house on the land located, and fully and distinctly surveyed the location and marked its boundaries on the ground so that they could be readily traced, and remained in the actual possession of the claim, a third party cannot trespass upon such claim to make a valid conflicting location.

ID.—NATURAL OBJECT OR PERMANENT MONUMENT NOT REQUIRED IN NOTICE OF LAND SURVEYED BY GOVERNMENT.—The requirement of reference in the notice to some natural object or permanent monument is for the purpose of identification, and is sufficiently met when the location is of a legal subdivision of land surveyed by the federal government.

ID.—PORTION OF SUBDIVISION PATENTED.—The inclusion in the notice of location of a little more than one acre of a patented mining claim extending into the subdivision, and making the location fractional, cannot affect its validity as to the unpatented part of the location, and a trespasser on the rights of the locators who is not in privity with the patentee cannot assert his rights.

ID.—MINERAL SURVEY NOT AFFECTING LEGAL ASPECT OF ATTEMPTED LOCATION BASED ON GOVERNMENT SURVEY.—A mineral survey for a patent by a deputy mineral surveyor, including a little over one acre of the smallest legal subdivision, taken by a deputy mineral surveyor, cannot affect the boundaries of the original government survey, nor the legal aspect of the attempted location by two locators of the forty acre tract, though it may actually include a little less than thirty-nine acres thereof.

ID.—PRACTICE SANCTIONED BY LAND DEPARTMENT.—The practice sanctioned by the land department of the United States allows a placer locator to locate a legal subdivision not exceeding the statutory limits, and to legally describe the land located by the proper legal subdivision, although the tract so located may embrace within the exterior limits prior patented lode claims, and the government will grant all the residue of the placer locations excepting the portion previously patented.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial.    J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

F. P. Tuttle, for Appellants.

Tabor & Tabor, for Respondents.

BURNETT, J.—The appeal is from the judgment and the order denying the motion of plaintiffs for a new trial. The judgment was entered April 30, 1907, and the notice of appeal was served and filed December 10, 1907. The appeal from the judgment, therefore, cannot be considered, as it was taken more than six months after said judgment was rendered. (Code Civ. Proc., sec. 939, subd. 1; *County of Contra Costa* v. *Soto,* 138 Cal. 57, [70 Pac. 1019].)

The action was brought to quiet title, and the determination of the controversy depends upon the validity of the location by defendants of a certain placer mining claim designated as lot No. 5 and situated in section 23 of township 14 north, range 10 east, M. D. M., in the county of Placer.

The principal reviewable contention of appellants is that the notice of the prior location by defendants was so uncertain and obscure as to amount to no notice at all. The said notice was partly printed and partly written and was in the following form:

"Notice is hereby given, that the undersigned, in compliance with the requirements of the Revised Statutes of the United States, have this day located the following described Placer Mining Ground, viz.:

"Commencing at the S. W. ¼ of the N. E. ¼ of section twenty-three (23) T. 14 N., R. 10 E., situate in the Brushy Mining District, County of Placer, State of California.

"This claim shall be known as the Canothus Placer Mining Claim.

"Located on the Seventh day of September, 1905.

"JAS. GAVIN.
"C. H. WASSON."

In reference to this notice the defendants allege in their answer that the words "Commencing at" were in the printed form used by them and through the inadvertence and mistake of the one preparing said notice these words were not erased and that the further words of description, "the S. W. ¼ of the N. E. ¼," etc., were written in the notice and that it was the purpose and intention of said locators to locate and claim

as a placer mining claim under said location the said "S. W. ¼ of the N. E. ¼," etc.

There is no direct evidence that the words "Commencing at" were "inadvertently" left in said notice. It does appear, however, that said notice was partly printed and partly written. It was received in evidence and was no doubt inspected by the learned trial judge who probably observed that these words were included in the printed matter. From the testimony of James Gavin it is clear that the defendants intended to locate said S. W. ¼ of the N. E. ¼. Their acts show that beyond peradventure. No one believing said testimony could reach any other conclusion than that said defendants intended to describe in said notice said land which they actually did locate on the ground. It therefore follows that the words were inadvertently left in, as the notice without them would perfectly describe said legal subdivision, the S. W. ¼ of the N. E. ¼, etc. The court's finding as to the inadvertence was, therefore, justified, but the finding is immaterial as there was a substantial compliance with the requirement of the law in reference to notice, and no one could possibly suffer any prejudice in consequence of the obvious oversight as to said words.

It is universally held that "Location notices should be liberally construed, having reference to the circumstances under which and the character of the parties by whom they are generally made." In the determination of the sufficiency of the notice the most important guide is the purpose of said notice, which is to identify the land claimed with reasonable certainty and it would seem, as stated by the supreme court in *Donahue* v. *Meister*, 88 Cal. 131, [22 Am. St. Rep. 283, 25 Pac. 1099], that "the notice is valuable chiefly as a temporary protection to the locator while the other acts are being performed. Under the law of Congress 'distinctly marking the location upon the ground so that the boundaries may be readily traced' is necessary and is the main act of original location. (*Holland* v. *M. A. G. Q. M. Co.*, 53 Cal. 149.) In *Gleeson* v. *Martin White Co.*, 13 Nev. 464, Beatty, J., delivering the opinion of the court, speaks of congressional legislation on the subject as introducing 'a system in which the preliminary posting and recording of notices is entirely out of place, except as a means of protecting a claim

during the time necessary for protecting the ledge and marking the boundaries of the location. When the location is thus marked, all that the notice and record were ever intended or expected to accomplish is effected in a manner far more satisfactory and complete.' "

Of course, as held therein, mining customs and the requirement of the law in relation to the posting of notices cannot be disregarded, but the whole question must be viewed in the light of the beneficent purpose of the regulations, and the acts performed by the parties in pursuance of the location notice must be considered if they tend to clarify and render certain what under the notice itself might be somewhat obscure and uncertain. This is true of a placer location as well as of a quartz mining claim considered in the Donahue case, *supra.*

Among the cases illustrating the indulgent consideration shown locations in good faith may be mentioned *Book* v. *Justice,* 58 Fed. 114; *Duryea* v. *Boucher,* 67 Cal. 141, [7 Pac. 421]; *Doe* v. *Tyler,* 73 Cal. 21, [14 Pac. 375]; *Kern Oil Co.* v. *Crawford,* 143 Cal. 302, [76 Pac. 1111]; *West Granite Mountain Co.* v. *Granite Mountain Mining Co.,* 7 Mont. 356, [17 Pac. 547].

Considering, as we should, the evidence in the light most favorable to the judgment of the trial court, we find that the said notice was posted on the ground a little east of the middle of the west line; the defendant Gavin built a house upon said land and entered into the occupancy of it and has so remained and has worked the claim ever since. He surveyed the land, drove stakes at the corners, cut the brush between, and blazed trees so that no one would have any difficulty in locating the boundaries of the claim upon the ground. All this was apparent to plaintiffs when they entered upon said land. If a third party, intending to locate, can readily ascertain from what has been done by the prior locator the extent and boundaries of the claim so located, then the object of the statute has been accomplished. (*Kern Oil Co.* v. *Crawford,* 143 Cal. 302, [76 Pac. 1111].) In *Duryea* v. *Boucher,* 67 Cal. 141, [7 Pac. 421], the notice erroneously described the land in the wrong government subdivision. The court held the notice sufficient, saying: "As the claim was for thirty acres, its boundary on the west could be easily deter-

mined. It makes no difference that the wrong legal subdivisions are inserted in the notice. These must be rejected as false when the remaining description sufficiently identifies the land in accordance with the maxim, *Falsa descriptio non nocet cum corpore constat.*"

There seems to be no substantial merit in the contention that the notice is invalid because it does not refer to some natural object or permanent monument. The only purpose of requiring such a reference is for identification of the claim. The identification is complete when the legal subdivision is designated, the land having been previously surveyed. The case of *Fuller* v. *Harris,* 29 Fed. 814, cited by appellants, is not in point. It involved an entire failure to identify the land. The court says: "There is neither a natural object, or permanent monument, or any designation or mark, by which the placer claim can be identified."

It is also contended that the location is invalid because not in conformity with the United States system of public land surveys or the rectangular subdivision of such surveys. As a matter of fact, the S. W. ¼ of the N. E. ¼ is a rectangular subdivision, and its designation as such in the notice of location would appear to be sufficient. The point of the objection, however, lies in the fact that a portion of this subdivision is included in a patented claim known as the Coates claim designated as lot 49. The residue of said S. W. ¼ of the N. E. ¼ thereby became fractional and was designated as lot 5. There is, however, as we understand it, no provision in the law or in the regulations of the land department for the official subdivisions of rectangular government tracts made fractional by the survey of a lode or placer claim which takes a portion of said subdivision, and this lotting is made by the land department not from any official survey of the lotted land, but, as said in the *Mary Darling Placer Case,* 31 Land Dec. 64: "it is apparently based upon data reported in or connected with the surveys of mining claims by deputy mineral surveyors." This inclusion, therefore, of a little over one acre of the forty acre tract in said lot 49 and the designation of the residue as lot 5 do not affect the legal aspect of the attempted location of said rectangular subdivision by defendants.

Again, there is no pretense that appellants have succeeded to any interest in the Coates claim, and it is difficult to understand how there is ground for them to complain because of the admitted fact that a small portion of said claim is included in respondents' location.

While the controversy is really over lot 5, it is admitted that section 23 is a full section of six hundred and forty acres and that said lot 5 consists of a little less than thirty-nine acres and is entirely embraced within said S. W. ¼ of the N. E. ¼ of said section 23.

The course pursued by defendants is approved and supported by authority. In Lindley on Mines, section 4486, it is said: "The practice now sanctioned by the department may be briefly summarized: A placer locator may locate a given subdivision of the public surveys not exceeding the statutory limits of twenty acres . . . and the location may properly describe the land located by the proper legal subdivision, although the tract so located may embrace within its exterior limits prior segregated and patented lode claims, thus dividing the placer claim into non-contiguous tracts. The patent when issued will describe the land by proper legal subdivisions, excepting, however, the tracts which have been previously segregated. In other words, the government may grant to the placer claimant the particular subdivision less what it has heretofore conveyed to others. . . . It had at one time been held that the segregation of lode claims within a given subdivision of the public surveys would result in leaving certain fractional areas, which were subsequently designated by lot numbers, and that the placer claimant was compelled to have these irregular fractions surveyed for the purpose of ascertaining the quantity and enter them as separate tracts, but this ruling subsequently was abrogated, and the practice heretofore noted of applying for the original government subdivision less the area covered by prior segregated area was sanctioned.

"So far as the courts are concerned the question has not been definitely determined, but the application of the principles applicable therein to lode claims is not accompanied with any serious difficulty."

In *Rialto No. 2 Mining Claim*, 34 Land Dec. 44, it is said: "The fact that a placer location, if made to conform to legal subdivisions of the public surveys, would embrace all, or a

portion of the land covered by a prior location, is not a suffi-
cient reason for failure to conform the placer location to legal
subdivisions as required by section 2331 of the Revised Stat-
utes. The fact that portions of other claims, already entered,
may be embraced in a placer location by conforming the same
to legal subdivisions, does not make such conformity 'imprac-
ticable' within the meaning of section 2331 of the Revised
Statutes, inasmuch as under the law such entered claims may
be excluded from patent proceedings involving the placer.''

We think the court below was justified in concluding that
there was an honest attempt by defendants to locate said
land, that there was a substantial compliance with the re-
quirements of the law and with the local mining rules and
customs, that plaintiff had full knowledge of the extent of
defendants' claim, and that it would be unjust to deprive de-
fendants now of the fruits of their enterprise and diligence.

The appeal from the judgment is dismissed. The order
denying the motion for a new trial is affirmed.

Chipman, P. J., and Hart, J., concurred.