[Crim. No. 948. First Appellate District, Division Two.—December 22, 1920.]

In the Matter of the Application of RICHARD HIGGINS for a Writ of Habeas Corpus.

[1] STATUTORY CONSTRUCTION—UNCONSTITUTIONAL ENACTMENTS. — No legislative enactment will be declared unconstitutional unless no other reasonable conclusion is possible.

[2] TAXATION—PROVINCE OF LEGISLATURE — JUDICIAL REVIEW. — What things are subject to taxation, and the amount and method of levying and collecting taxes, are essentially matters of legislative concern with which the court will not interfere unless some provision of the constitution is clearly violated.

[3] ID. — RULES APPLICABLE TO LICENSE TAXES. — The same general rules apply to license taxes for revenue as to other taxes as also to license fees enacted under the police power of the state in matters affecting the public health, safety, or morals; but the power to tax and to collect license fees under the police power must be found in the generic law.

[4] ID. — SAN FRANCISCO CHARTER — LICENSE TAXES FOR REVENUE — LICENSE FEES UNDER POLICE POWER.—Under the provisions of subdivision 15 of section 1, article II, chapter 2, of subdivision 9 of section 1, article VIII, chapter 3, and of section 7, article VIII, chapter 4, of the charter of the city and county of San Francisco, the power exists both to levy license taxes for revenue and to collect license fees under the general police power; and, under such circumstances, where both powers exist in relation to a specific business, it is a matter of indifference whether the particular enactment is under one or the other or both of the powers.

[5] ID.—BUSINESS REQUIRING PERMIT—RIGHT TO CHARGE FEE.—Under subdivision 15 of section 1, article II, chapter 2 of the charter of the city and county of San Francisco, while the supervisors have no general power to levy a tax upon the business of those who sell merchandise at a fixed place of business, they have such power if the business is one requiring a permit from the police commission;

and as to the latter kinds of business, the supervisors have power also to charge a license or permit fee.

[6] Id. — Licensing of Second-hand Dealers — Classification of Dealers of Second-hand Cars.—A dealer in second-hand merchandise is within the exception of the charter provision which permits the license charge to be made whether considered as a revenue or a police measure; and the differences between the business of taking second-hand vehicles in exchange for new ones and the business of dealing in second-hand vehicles furnish a sufficient ground for a classification between the two classes of dealers in second-hand cars and for charging the latter a higher rate of tax than the former.

[7] Id. — Validity of San Francisco License Ordinance — Reasonableness of Classification and Charge.—Considered as a revenue measure, the classification between the two classes of dealers in second-hand cars provided in section 18 of the San Francisco license ordinance is not unreasonable, and, considered as a police measure, it cannot be held as a matter of law that the charge of fifty dollars a quarter is excessive, burdensome, or unjust, or not commensurate with the cost of the required police supervision.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody on a charge of violating the San Francisco license ordinance. Petitioner remanded to custody.

The facts are stated in the opinion of the court.

Chas. W. Haswell for Petitioner.

Matthew Brady, District Attorney, and Milton T. U'Ren, Deputy District Attorney, for Respondent.

BRITTAIN, J.—From the petition it appears that Richard Higgins was arrested and, until his release on bail when the writ of *habeas corpus* was issued, was imprisoned, on a complaint charging him with the violation of section 18 of Ordinance No. 5132, New Series, of the city and county of San Francisco. The ordinance is the general license ordinance, and section 18 is as follows: "Every person, firm or corporation engaged in the business of selling, exchanging or buying second-hand or used automobiles or other motor

6. Power of municipal corporation to regulate traffic in second-hand business, note, 24 L. R. A. (N. S.) 1168.

vehicles for the purpose of resale or exchange of same shall pay a license of fifty dollars ($50) per quarter for each such place maintained, provided, however, that persons reselling used automobiles or other motor vehicles taken in exchange or part payment for new automobiles or other motor vehicles, shall pay a license of twenty-five dollars ($25) per quarter."

The record fails to show whether Higgins was dealing in new automobiles or in second-hand vehicles only. If he was in the second category of those sought to be taxed by the section in question, some of the matters on which he relies would require no consideration at this time. Since both the petitioner and the respondent present the entire matter of the validity of the enactment, it may be assumed that Higgins was engaged in the business of dealing in second-hand automobiles, and, if subject to any tax, to that of fifty dollars a quarter. In the brief for the petitioner reliance is placed on four propositions, but since the whole matter is before the court it is unnecessary to follow any artificial segregation of mere points.

In such cases as this certain fundamental rules should be borne in mind. They are so well known that citation of authority is unnecessary, but since they are sometimes overlooked, a reference to them is not amiss. [1] No legislative enactment will be declared unconstitutional unless no other reasonable conclusion is possible. Government cannot exist without recourse to the power of taxation. [2] What things are subject to taxation, and the amount and method of levying and collecting taxes, are essentially matters of legislative concern with which the courts will not interfere unless some provision of the constitution is clearly violated. [3] The same general rules apply to license taxes for revenue as to other taxes, as also to license fees enacted under the police power of the state in matters affecting the public health, safety, or morals. The power to tax and to collect license fees under the police power must be found in the generic law.

[4] The charter of San Francisco (art. II, c. 2, sec. 1, subd. 15) provides that the board of supervisors shall have power "to impose license taxes and to provide for the collection thereof; but no license taxes shall be imposed upon any person who, at any fixed place of business . . .

sells or manufactures goods, wares or merchandise, *except such as require permits from the board of police commissioners* as provided in this charter." It further provides (art. VIII, c. 3, sec. 1, subd. 9) that the board of police commissioners shall have power "to grant or refuse to grant permits to any person engaged or desiring to engage in business as a pawnbroker, peddler, junk-shop keeper, dealer in second-hand merchandise, auctioneer and intelligence office keeper," etc. The chief of police (art. VIII, c. 4, sec. 7) "shall possess powers of general police inspection, supervision and control, over all pawnbrokers, . . . dealers in second-hand merchandise . . . All persons engaged in said callings must first procure permits from the commissioners . . . the chief may . . . empower members of the police department, when in search of property feloniously obtained or in search of suspected offenders, or in search of evidence to convict any person charged with crime, to examine the books and the premises of any such person. Any such member of the police department, when thereunto empowered . . . may examine property alleged to have been . . . lost . . . or stolen." Under these provisions the power exists both to levy license taxes for revenue and to collect license fees under the general police power. Where both powers exist in relation to a specific business it is a matter of indifference whether the particular enactment is under one or the other or both of the powers. (*Gundling v. Chicago,* 177 U. S. 183–188, [44 L. Ed. 725, 20 Sup. Ct. Rep. 633, see, also, Rose's U. S. Notes].)

The argument that the section of the ordinance must be considered only as a revenue measure is without force. [5] Under subdivision 15, section 1 of chapter 2, article II, of the charter, while the supervisors have no general power to levy a tax upon the business of those who sell merchandise at a fixed place of business, they have such power if the business is one requiring a permit from the police commission. As to the latter kinds of business, the supervisors have power also to charge a license or permit fee. There is nothing in the decision of the supreme court in *Rapp & Son* v. *Kiel,* 159 Cal. 702, [115 Pac. 651], nor that of this court in the *Matter of Dees, ante,* p. 11, [194 Pac. 717], which helps the petitioner here. It the Rapp case, as in the Dees case, the imposition, whether considered as a tax

in its technical sense or a permit fee under the police power, could not be upheld because in each case it was a charge on a business within the protection of the charter provision and not within the exception. [6] A dealer in second-hand merchandise is within the exception which permits the license charge to be made whether considered as a revenue or a police measure. The correlative argument that the ordinance cannot be considered as regulatory in character because it discriminates between the business of taking second-hand vehicles in exchange for new ones and the business of dealing in second-hand vehicles is fallacious. It is a matter of common notoriety that the theft, disguise, and resale of motor-cars has become so common as to tax the powers of the police throughout the United States to recover the stolen cars and to bring the criminals to trial. It would be fatuous to assume that a motor-car thief would very often pay the difference between the second-hand value of a used car and the selling price of a new car. The tendency of the thief would be to get money in exchange for the stolen car from those in the business of buying used cars for resale. Without reflecting in any way on the petitioner or on any other dealer in used cars, of whom there must be as honest and honorable men as those in any other mercantile pursuit, it is also a matter of common notoriety that the temptation to buy cheaply, which is so often presented to those carrying on the business of pawnbroker, junk dealer, second-hand dealer, and kindred activities, renders it necessary for the public safety and morality that their business activities be subjected to police scrutiny and regulation. There is a clear distinction between the business of buying at the lowest price second-hand automobiles for resale and the business of selling new cars at the highest price and taking used cars in part payment. In the one case the object is to make a profit on original sales of new cars, and in the other to make a profit on the purchase and resale of second-hand cars. These reasons furnish a sufficient ground for a classification between the two classes of dealers in second-hand cars. In this case the license charge is upon a business subject to police control. The Richardson case (170 Cal. 71, [148 Pac. 213]) dealt only with license taxes imposed solely for revenue. It is, therefore, inapplicable to this phase of the present case. The last contention of the

petitioner is that the section is discriminatory against those regularly engaged in the business of selling second-hand automobiles at a fixed place of business as compared with those selling such cars and maintaining no place of business. This same argument might have been made in ancient times against every saloon license charge because a license was not imposed upon bootleggers. There is no question before the court, and no evidence, to warrant it in discussing other police regulations which may or may not have been made. The license regulations in question apply to all engaged in the business of dealing in second-hand automobiles. [7] In conclusion, it appears to the court that in the section of the ordinance in question, considered as a revenue measure, the classification is not unreasonable, and, considered as a police measure, it cannot be held as a matter of law that the charge of fifty dollars a quarter is excessive, burdensome, or unjust, or not commensurate with the cost of the required police supervision. The enactment is valid under either of the powers vested in the supervisors, and under both.

It is ordered that Richard Higgins be remanded to the custody of the chief of police of the city and county of San Francisco.

Langdon, P. J., and Nourse, J., concurred.