[Civ. No. 8023. Second Appellate District, Division Two.—November 1, 1933.]

PATRICK GRIFFIN, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Spencer Ward for Appellant.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Joseph T. Watson, Deputy City Attorney, for Respondent.

CRAIG, J.—In an action against the City of Los Angeles, based upon seven alleged causes of action, general and special demurrers were sustained as to four thereof, and after a trial without a jury upon the first, second and seventh causes of action, findings and judgment were rendered in favor of the defendant, from which the plaintiff appealed.

The city council of said city, pursuant to the commission of a homicide during the robbery of a bank, enacted an ordinance wherein they recited that "the presence in the City of Los Angeles of the persons, and each of them, who committed the crime hereinabove referred to, is a menace to the public peace and safety, and, therefore *this ordinance is urgently required for the immediate preservation of the public peace, health and safety; . . .* " By the same enactment it was ordained that "*upon the apprehension and conviction* of each or either of said persons now at large who participated in the commission of said crime, the sum of twenty-five hundred dollars ($2,500.00) each, therefor, shall be paid out of the general fund of the city of Los Angeles, to the person or persons *causing said apprehension resulting in said conviction; . . .* " Following an indictment by the grand jury, and the publication of the foregoing offer, the

appellant arrested one of the persons named in said ordinance, who was duly tried, found guilty and sentenced, and the judgment of conviction was thereafter affirmed upon appeal. In addition to these recited facts the trial court found in the instant case that "thereafter a claim for said reward was duly presented by the plaintiff to the defendant City of Los Angeles, but the same was denied by the council of said City of Los Angeles". And as a conclusion of law upon which the judgment was founded, stated: "That the defendant City of Los Angeles was not authorized or empowered by the Constitution or general laws of the state of California or by the charter of said city of Los Angeles to offer a reward *for the apprehension and conviction* of a murderer."

Many intricate questions are presented, but unless the action could in any event have been maintained, and the appeal upon that ground presents the same for consideration, their determination would not avail either party's cause. The respondent urges that said action was based upon a stale demand, and relies upon the following provision of the city charter: Section 376 thereof forbade the commencement of any suit upon a claim for money unless such claim had been presented "within six (6) months after the last item of the account or claim *approved*". It appeared that said claim was not presented within the prescribed limitation of time. In *Farmers & Merchants Bank* v. *City of Los Angeles,* 151 Cal. 655 [91 Pac. 795], it was held: "Under provisions of law of this character, it has always been held in this state that the presentation of a demand in the manner provided was a necessary prerequisite to the maintenance of a suit against a public corporation to recover money, and that a complaint containing no such allegation fails to state a cause of action." As indicated by the preceded city charter and by amendment to the present charter which precedes it, it may be conceded, but is not necessary to a decision that we hold, that the word "approved" was intended to require that a claim should have "accrued" within the time mentioned. ██ However, it has been uniformly held that the party who prevails at the trial has no error committed at the trial of which he may complain, and that if he had he would not be heard to complain, for the reason that he was not injured thereby. (*Byxbee* v. *Dewey,* 128

Cal. 322 [60 Pac. 847].) Other cases to the same effect are: *Seaward* v. *Malotte*, 15 Cal. 305; *Klauber* v. *San Diego St. Car Co.*, 98 Cal. 105 [32 Pac. 876]; *Estate of Olmsted*, 122 Cal. 224 [54 Pac. 745]; *Coyle* v. *Lamb*, 123 Cal. 264 [55 Pac. 901]; *Globe Grain & M. Co.* v. *Drenth*, 14 Cal. App. 604 [183 Pac. 285]; *Meeker* v. *Cross*, 59 Cal. App. 512 [211 Pac. 229]. An appellee will not be permitted to present for review exceptions taken by him unless he shall also have perfected an appeal. (*Bryan* v. *Idaho Quartz M. Co.*, 73 Cal. 249 [14 Pac. 859]; *Estate of Olmsted, supra; South San Bernardino L. etc. Co.* v. *San Bernardino Nat. Bank*, 127 Cal. 245 [59 Pac. 699]; *Christopher* v. *Condogeorge*, 128 Cal. 581 [61 Pac. 174]; *Benson* v. *Bunting*, 141 Cal. 462 [75 Pac. 59]; *Kern Oil Co.* v. *Crawford*, 143 Cal. 298 [76 Pac. 1111, 3 L. R. A. (N. S.) 993]; *Garibaldi* v. *Grillo*, 17 Cal. App. 540 [120 Pac. 425].) A defendant not appealing may not attack a finding that the plaintiff made demand before suit on guaranties. (*Bank of America of California* v. *Granger*, 115 Cal. App. 210 [1 Pac. (2d) 479].) It is also true that upon an appeal from a part of the judgment only an appellate court has no jurisdiction to reverse any part of the judgment except the part to which the appeal is directed. (*Lake* v. *Superior Court*, 187 Cal. 116 [200 Pac. 1041].) And upon an appeal, as here, upon the judgment-roll alone no other questions than those appearing on the face of the judgment-roll are reviewable. (*Billsbach* v. *Larkey*, 161 Cal. 649 [120 Pac. 31]; *Galvin* v. *Fannen*, 154 Cal. 774 [99 Pac. 183]; *Miller & Lux* v. *Enterprize Canal etc. Co.*, 145 Cal. 652 [79 Pac. 439]; *Coats* v. *Coats*, 160 Cal. 671 [118 Pac. 441, 36 L. R. A. (N. S.) 844]; *Batchelder* v. *Baker*, 79 Cal. 266 [21 Pac. 754]; *Norton* v. *Newerf*, 45 Cal. App. 10 [187 Pac. 57].) So, in the instant case, we are authorized to consider only grounds assigned by the appellant upon the face of the judgment-roll alone.

 The principal contention between the parties arises from the diversity of interpretations of the ordinance in question and of the conclusion of the trial court. More than a citation of cases holding that homicide is an offense against the state and that it is not one of which a municipality may take or authorize cognizance by its constituted municipal authorities, is unnecessary. (*Popper* v. *Broderick*, 123 Cal. 456 [56 Pac. 53]; *Jackson* v. *Baehr*, 138 Cal. 266 [71 Pac. 167];

*Hancock* v. *Board of Education,* 140 Cal. 554 [74 Pac. 44] ; *Robert* v. *Police Court,* 148 Cal. 131 [82 Pac. 838] ; *Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172].) From the foregoing it must follow that the conclusion in itself is sound law, that "the defendant City of Los Angeles was not authorized or empowered by the Constitution or general laws of the state of California or by the charter of said City of Los Angeles to offer a reward *for the apprehension and conviction* of a murderer". But it cannot be said that in all cases a municipality must be held to be without power to enforce valid subsisting local laws nor to appropriate funds for the preservation of public peace, health and safety when urgent need arises, merely by a showing of the commission of a heinous offense within its domain as part of the danger to peace and safety underlying such appropriation or attempted enforcement of local laws. As was aptly expressed by the Supreme Court of another state, there is an important distinction between ordinances making such appropriations which look to the protection of the general public from those which provide for preservation of the welfare of the inhabitants of the municipality. (*People* v. *Village of Holly,* 119 Mich. 637 [78 N. W. 665, 75 Am. St. Rep. 435, 44 L. R. A. 677].) In the absence of appropriate authority thus far discovered in this state, the general principles announced in refusing a perpetual restraining order against payment of a reward for the prosecution of arsonists may be quoted from the case last cited: "2 Bac. Abr. 147, supports the doctrine that the power to prevent fires is incidental to all municipalities; while Mr. Dillon says: 'The governing body of a municipal corporation (which has express power to protect property and promote the welfare of its inhabitants) may, it has been held, offer a reward for the detection of offenders against the general safety of its people, as, for instance, those guilty of the crime of arson within its corporate limits. The contrary doctrine has also been held.' The California Supreme Court is said to uphold the power, but we are unable to verify it from the citation given. Some of the states deny it. The latest case seems that of *City of Winchester* v. *Redmond,* 93 Va. 711 [25 S. E. 1001, 57 Am. St. Rep. 822], where authorities supporting it are collected. Of these some apply to other offenses, the commission of which affects the inhabitants of the city only in common

with those of the state outside of the city. Thus, in *Baker* v. *City of Washington,* 7 D. C. 134, it was held that the defendant had not authority to offer a reward for the capture of the slayer of President Lincoln. A similar case, involving a reward for murder, is that of *Gale* v. *Inhabitants of South Berwick,* 51 Me. 174. *Patton* v. *Stephens,* 14 Bush. (Ky.) 326, applied the same rule to a reward offered for the apprehension of one who, through forgery, had embezzled the city funds. The case of *Hanger* v. *City of Des Moines,* 52 Iowa 193 [2 N. W. 1105, 35 Am. Rep. 266], was another case of reward for the detection of a murderer. (*Butler* v. *Milwaukee,* 15 Wis. 493, was not a case of arson, and seems to be within the principle of the preceding cases. The rewards in all of these cases are open to the criticism that they were not offered to preserve the welfare of the inhabitants of the municipality, as contradistinguished from those of the general public. The case of *Murphy* v. *City of Jacksonville,* 18 Fla. 318 [43 Am. Rep. 323], is not in point, because governed by a prohibitive statute, which, in the absence of a 'general welfare clause' (which does not appear), is a sufficient reason for the decision. *Crofut* v. *City of Danbury,* 65 Conn. 298 [32 Atl. 365], is in point, and supports *City of Winchester* v. *Redmond.* The danger of conflagration in cities and villages necessitates preventive measures that are not common in sparsely-settled districts, and such municipalities are authorized to expend large sums for apparatus in extinguishing them. But these only serve to prevent the spread of fires. A determined incendiary in a city is a menace which cannot be safely disregarded, and may call for more than the ordinary methods to guard against his acts. We think the 'general welfare clause' is sufficiently broad to cover the employment of private detectives, through rewards, in such emergencies. We consider its exercise as 'contravening no provision of the Constitution . . . and made in the exercise of the police power necessary to the safety of the city', and, we may add, impliedly conferred upon it. See *Baumgartner* v. *Hasty,* 100 Ind. 580 [50 Am. Rep. 830]." From the foregoing it would seem to be established law that appropriations by a municipality for immediate preservation of the public peace, health and safety are not forbidden. At a time when the carrying of concealed

weapons was not prohibited by general law an ordinance of the city and county of San Francisco fixing a penalty therefor was held enforceable, as such a municipal regulation. (*In re Cheney*, 90 Cal. 617 [27 Pac. 436].) It was therein said: "Many police regulations which are demanded by the exigencies of life in a crowded city have reference chiefly to social order, and are directed to the promotion of the comfort and safety of the citizen, as well as to the protection of individual and public property. The mode of using the streets, the manner of conducting business, the times and places at which certain occupations shall be plied, are instances of this class, and the power granted to the city is limited to their regulation. It is with reference to ordinances of this character that it is said by courts they must be reasonable, and not violate those rights of the individual that are superior to the demands of society. There are other police regulations, however, which are intended for the prevention of crime and the preservation of the public peace, and in reference to which the legislative body of the city is vested with a discretion that is not reviewable by the courts. In the exercise of this power, the municipality, in determining the penalty to be imposed for violating its ordinances, is limited only by the terms of its charter, and the reasonableness of the punishment is not to be questioned elsewhere. It is a well-recognized fact that the unrestricted habit of carrying concealed weapons is the source of much crime, and frequently leads to causeless homicides as well as to breaches of the peace that would not otherwise occur. . . . It is to protect the law-abiding citizen, as well as to prevent a breach of the peace or the commission of crime, that the ordinance in question has been passed."

As correctly stated by the appellant, the powers conferred upon the City of Los Angeles in municipal affairs are subject to charter restrictions only, and the enumerations therein of powers conferred do not constitute limitations thereon for such purposes. (Charter, chap. 1, sec. 2.) We find in said charter no restriction upon the power of the City of Los Angeles to reward persons for the arrest and conviction of one charged with the commission of a felony. However, if not permitted, its denial by enactment or futile assumption by enactment could merit no greater significance than its designed omission. Attention is called to the exist-

ence of express provision in the original charter, and the omission from the present one, of this power. In distinguishing an instance where a plain inadvertence appeared from that under consideration by the Virginia Supreme Court of Appeals in *Johnson* v. *Barham,* 99 Va. 305 [38 S. E. 136], it was said: "The propriety of the insertion of the word in that case is clearly demonstrated in the opinion, which is supported by abundant authority, and in this case we may well believe that the legislature intended to give an appeal to the corporation court; but there is nothing in any part of the statute which throws any light upon that intention, and we cannot say that the purpose to do so is plainly deducible either from the context or other portions of the act. (Suth. St. Const., sec. 261.) Nor would the act be rendered incongruous or unintelligible by the omission of the word 'court'; nor would its omission lead to absurd results. It is safer in a case which admits of doubt, where the court finds itself at all involved in conjecture as to what was the legislative intent, that the particular object which may reasonably be supposed to have influenced the legislature in the particular case should fail of consummation than that courts should too readily yield to a supposed necessity, and exercise a power so delicate and so easily abused as that of adding to or taking from the words of the statute. In such a case, as has been said by courts in a different connection, 'to doubt is to be resolved'." Article XI of our Constitution in three instances prescribes the limits of municipal charters. Section 6 thereof provides that cities are authorized by charter "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws". By section 8 it is provided: "It shall be competent in any charter formed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulation in respect to municipal affairs, subject only to the restrictions and limitations in their several charters, and in respect to other matters they shall be subject to general laws." And in section 11 is granted to any county, city, or township the power "to make and enforce within its limits all such local,

police, sanitary and other regulations as are not in conflict with general laws". Section 22 of article I provides: "The provisions of this Constitution are mandatory, and prohibitory, unless by express words they are declared to be otherwise." And by section 25 of article IV it is ordained that the legislature shall not pass local or special laws in any case (thirty-third subsection) "where a general law can be made applicable". It has been held by our Supreme Court that municipal corporations have only the powers expressly conveyed or conferred and such as are necessarily incidents to those expressly granted, or essential to the declared objects and purposes of the corporation. (*San Francisco* v. *Boyle,* 195 Cal. 426 [233 Pac. 965]; *Whitmore* v. *Brown,* 207 Cal. 473 [279 Pac. 447].) It has been decided that when the Constitution grants to local authorities the right to make and enforce police regulations "not in conflict with general laws", it is intended that local regulations of every kind may be made and enforced, except where the particular act described by the ordinance is the same act already included within the category of crimes as covered by the general codes or statutes, or the punishment affixed by ordinance for acts of a lesser degree than similar acts described in the statute is in excess of or not in harmony with the punishment designated by the latter. (*People* v. *Fayes,* 32 Cal. App. 37 [162 Pac. 137].) The jurisdiction of superior courts is conferred by the Constitution, and cannot be taken away by any act of the legislature. (*City of Tulare* v. *Havren,* 126 Cal. 226 [58 Pac. 530].) They are required to take jurisdiction "in all criminal cases amounting to felony". (Const., art. VI, sec. 5.) Hence, we cannot say that we are permitted to view the omission from the present city charter of authority to reward arrest of persons charged with felony, as an inadvertence or intended revival or continuance of the preceding provision contained in the abandoned charter.

■ Reverting to the ordinance in controversy, it remains to determine whether it falls within the foregoing prohibited enactments or, governed by the same rules of construction, it can be said to accomplish the purposes said by the appellant to have been intended. In recognition of the existence of persons within its limits who are a menace to the peace, health and safety of the inhabitants of said city, it is

contended that the object of the ordinance was to rid the community of such dangers and to obtain additional surveillance therefor. It is conceded that "the trial and punishment of offenses defined by the laws of the state is not a municipal affair", and it has been so held. (*Robert* v. *Police Court*, 148 Cal. 131 [82 Pac. 838].) And it may be conceded that the apprehension and removal from the midst of a community of those who threaten its peace, health and safety is not a trial and punishment of such persons for felony. But the ordinance, although expressing the need for the exercise of authorized powers, expressly states that the proposed reward is *"for the apprehension and conviction* of each or either of the two persons now at large, who, on August 22, 1925, participated in the bank hold-up which resulted in the shooting and killing of Patrolman Wylie E. Smith, a police officer of the City of Los Angeles"; and that *"upon the apprehension and conviction* of each or either of said persons now at large who participated in the commission of *said crime,* the sum of twenty-five hundred dollars ($2,500.00) each, therefore, shall be paid . . . "

"Municipal affairs, as those words are used in the organic law, refer to the *internal* business affairs of a municipality. It was the internal business affairs of municipalities then existing and those of municipalities to be hereafter created that the constitutional amendment was framed to meet." (*Fragley* v. *Phelan,* 126 Cal. 383 [58 Pac. 923].) The Supreme Court long since held as to fees of jurors in criminal cases that notwithstanding an inhibition contained in the charter of the city and county of San Francisco the state statutes controlled and that the auditor would be compelled to issue a warrant therefor; "that the superior courts are state courts, and criminal cases concern the state, and are *state affairs"*. (*Jackson* v. *Baehr,* 138 Cal. 266 [71 Pac. 167].) And that " 'any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied'." (*Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172].) "The act of driving a motor vehicle while under the influence of intoxicating liquors is of no immediate or special concern to the city as such. It is of general concern to the inhabitants of a city in common with all other residents of the state. . . . It is not a 'municipal affair'." (*Helmer* v.

*Superior Court,* 48 Cal. App. 140 [191 Pac. 1001].) The precise question here presented does not appear to have been determined in this state, but upon the foregoing principles the Supreme Court of Virginia has held adversely to the appellant's contention. After careful examination of authorities relating to the power of a municipality to offer rewards for apprehension and conviction of incendiaries, it was there concluded: ''Crime is an offense against the state, and not against the city, town, or county in which it may be committed, as distinguished from the rest of the state. The offense is against the sovereign authority, and not against the individual or particular community. All the people of the state are concerned in the punishment and suppression of crime. And the state, whose prerogative it is to punish crime, has made adequate provision for the vindication of the public justice. When a crime has been committed, it is her law, and not that of the corporation, that is broken. She has prescribed penalties for the various species of crime, and enacted laws for the arrest, trial, and punishment of criminals. They are arrested by her officers, and tried by her judiciary under her laws. The state constantly makes use of officers of the corporation in the discharge of its governmental functions, and requires them to perform, within the corporate limits, duties not strictly or properly local or municipal in their nature. In the performance of such duties they exercise state powers, and are in that respect state officers. As was said by Judge Staples, in *Burch* v. *Hardwicke,* 30 Gratt. (71 Va.) 24, 34 [32 Am. Rep. 640]: '' 'When the mob rages in the streets, when the incendiary and assassin are at work, they do not offend against the city, but against the state. When they are detected and arrested it is by the chief of police and his subordinates, under the authority of the state laws, and as an officer of the state; and when they are tried and convicted, it is by officers representing the state and her sovereign power.' '' (*City of Winchester* v. *Redmond,* 93 Va. 711 [25 S. E. 1001, 57 Am. St. Rep. 822].)

There is no type of crime which might well under circumstances prevailing in a municipality at a particular time when an ordinance of the nature here involved is passed be more especially hazardous to the welfare of the community as distinguished from the state at large than arson. Yet,

from the decision just quoted it is apparent that while there may be authority to the contrary in other states, even that crime does not become one against the municipality solely because of its nature; but in the instant case there is nothing in the nature of the offense committed and for the commission of which a reward was offered that takes it out of the crimes against the state. As further said in the case last cited: "Municipal corporations are chartered, as we have seen, to regulate and administer the local and internal concerns of the people of the particular locality which is incorporated. They are not created to execute the criminal laws of the state. That is a matter for which the state has made ample provision by general statutes, and with which the corporation as such has nothing to do, unless expressly authorized by its charter or by statute. Hence the offer of a reward for the apprehension and conviction of an offender against the criminal law of the state is the exercise of a state power, and is foreign to the objects and purposes of a municipal corporation." Other authorities to the same effect are cited in volume 19, at page 794, Ruling Case Law; *Murphy* v. *City of Jacksonville*, 18 Fla. 318 [43 Am. Rep. 323]; *Hanger* v. *Des Moines*, 52 Iowa, 193 [2 N. W. 1105, 35 Am. Rep. 266].

We conclude, therefore, that although in a proper case the present charter of the City of Los Angeles does not prevent its legislative body from appropriating funds to pay a reward for the apprehension of one who has violated a penal law of the state, it must, in order that they may exercise such authority, appear not only that the council recognizes that the action is taken for immediate protection of the public peace, health and safety, but further that it is taken in recognition of the fact that the need for protection of public interest is peculiarly local and municipal, and that it be directed toward the apprehension of one so recognized as a menace to local rights.

The judgment is affirmed.

Stephen, P. J., and Archbald, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1933.