[Sac. No. 4872. In Bank.—March 21, 1935.]

E. N. FESSIER, Appellant, v. J. P. CAMPBELL et al., Respondents.

Chester E. Watson and F. C. Clowdsley for Appellant.

Decoto & St. Sure, J. Harold Weise, Shelly J. Higgins, Raymond G. Thompson, Mason & Windham and Ignatius F. Parker, as *Amici Curiae* on Behalf of Appellant.

J. Leroy Johnson and Tom B. Quinn for Respondents.

John J. O'Toole, City Attorney, and Thomas P. Slevin, Deputy City Attorney, as *Amici Curiae* on Behalf of Respondents.

THE COURT.—The plaintiff, a resident taxpayer of the city of Stockton, brought this action to enjoin the defendant officers of the city from issuing to The Equitable Life Assurance Society of the United States a warrant in the sum of $47,998.18 in payment of the first annual premium on a contract of group police and firemen's disability, pension, and life insurance proposed to be undertaken by the city,

and from paying such sum for the purpose stated. The case was heard upon a written stipulation of facts. Judgment went for the defendants. However, the trial court continued in force, pending appeal, a temporary restraining order theretofore issued. The plaintiff appealed from the judgment.

The city of Stockton is governed by a freeholders' charter, adopted in 1923 (Stats. 1923, p. 1321). By section 58 of article V of the charter power is given ''to provide a pension and relief fund for policemen and firemen and other officers and employees of the city''. On July 14, 1932, the city council adopted Ordinance No. 1278, and subsequently amending ordinances, creating a pension board and providing for certain pension and relief benefits for disabled and retired members of the police and fire departments of the city, to be administered by the pension board. Briefly the ordinance designates the retirement age of the members, the monthly retirement income to be received and the method of its computation, but not to exceed $125 per month, the payment of a benefit during physical or mental disability caused by the discharge of departmental duties, and death benefits of $5,000 upon natural death and $5,000 additional in the event of accidental death, if the member die before retirement, and $1,000 if death occur after retirement, and in addition the unpaid sums deposited by the member to the pension fund without interest. Contributions are provided by the member to the pension fund based on the member's salary, and in addition the sum of $1 monthly, or more as may be required, to the death benefit fund. The ordinance contemplates that death benefits shall be paid for by the member's contributions, either directly or applied toward premiums in case the death benefit is provided by insurance contracts, but that the city shall bear the cost of the accidental death benefits when death is due to the employment. The cost of all benefits which is not covered by members' contributions is to be made up by contributions by the city. The member is given the right to designate a beneficiary of the death benefits without any restraints on the designation. The ordinance further provides that payment of benefits under any provision of the Workmen's Compensation Act shall be applied as a credit and setoff against any benefits due under the ordinance. In the event of his resignation the member is entitled to re-

payment of the amount of his contributions on account of pension and relief only, without interest.

Assuming to exercise its power pursuant to the charter and the ordinance, the city council on October 10, 1932, authorized the city manager to receive bids from insurance companies of the cost of underwriting the city's obligations under the terms of the ordinance. The bid of The Equitable Life Assurance Society of the United States in the sum of $52,069, to cover the first annual premium for the first five-year period, which was the second highest of seven bids received, was accepted on June 26, 1933, and a portion of the premium was appropriated and paid out of the police and firemen's pension fund with the application for said contract or contracts. It may be assumed that the proposed contracts of insurance provide in all substantial respects a fulfillment of the provisions of the ordinance.

Since at least 1901 the city of Stockton has had in force some ordinance providing a pension fund for the benefit of the members of the police and fire departments of that city, and even for some years before that date there have been pension provisions applicable to the city of Stockton. (*Klench* v. *Board of Pension Fund Commissioners of the City of Stockton*, 79 Cal. App. 171 [249 Pac. 46].) On January 1, 1932, there was in the pension fund the sum of $77,082.05. During the ensuing twenty-one months there was not a great fluctuation in the amount of the fund. In three months of that period the amount fell below the sum on hand on January 1, 1932, the lowest amount being $75,213.85, and in seven of those months the amount exceeded $80,000. On August 31, 1933, the amount in the fund was $81,862.77.

In August, 1933, a resolution was passed by the city council authorizing appropriations from the fund for the payment of the balance of $47,998.18 of the first annual premium under said contracts of insurance and by resolution the pension board registered its consent to the payment thereof. The complaint in the present proceeding was filed in July, 1933.

The main question to be determined is whether the city has the implied power to execute the authority granted by the charter to provide a pension and relief fund by contracting for the payment of its obligations in that respect by an insurance company. The question is also presented

whether the city has the power to include provisions for the death benefits in said ordinance.

The proposition is not questioned that provisions for relief and pension funds are not in violation of article IV, section 31, of the Constitution prohibiting the gift of public money. (*O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366]; *Pennie* v. *Reis,* 80 Cal. 266 [22 Pac. 176].) And we shall not attempt to determine in this case the question whether the city may arrange for the taking out of group life insurance for certain classes of its employees where it may be said that the insurance premiums are paid for entirely out of contributions from the salaries of the employees, as was done and upheld in some cases (*State* v. *City of Memphis,* 147 Tenn. 658 [251 S. W. 46, 27 A. L. R. 1257]; *Nohl* v. *Board of Education of City of Albuquerque,* 27 N. M. 232 [199 Pac. 373, 16 A. L. R. 1085]), and disapproved and the power denied in at least one case (*People* v. *Dibble,* (Sup.) 189 N. Y. Supp. 29; reversed on other grounds 231 N. Y. 593 [132 N. E. 901]). The defendants contend that the provisions for death benefits in the ordinance here involved and contemplated to be covered by the insurance contract are nothing more than provisions for the group life insurance which was approved in the cases cited *supra.* But we do not so view the record. Here, by its contract, the city has undertaken to pay at least the accidental death benefits when death is due to the employment, and which may be a large part of the cost of such insurance.

Its action in this respect is purportedly pursuant to the power vested in it by section 58 of article V of the city charter. That section does not expressly include the right to provide for death benefits, nor is an implication of its inclusion necessary in order to execute the power vested in the city. If the framers of the charter intended that the city should become obligated for the payment of death benefits, the matter could easily have been included, assuming, of course, that such a provision would be constitutional, a question which we do not determine. The defendants in this respect also argue that the accidental death benefit is only what is provided by the Workmen's Compensation Act. But this is not necessarily so. The ordinance contemplates that payments under the Workmen's Compensation Act might be less. (Sec. 9 [c] [1] and [2], Stats.

1917, chap. 586, as amended.) Furthermore, the beneficiaries entitled to the death benefits under the ordinance are not restricted to the classes designated in the Workmen's Compensation Act, but the employee is permitted to name as beneficiary any person, whether related to him or not.

The defendants urge that the execution of the power to provide a pension and relief fund by purchasing a contract of insurance therefor is implied from the provision in question, or if not so implied, then the mode of executing the power, not being expressed in the charter provision, so it is claimed, the city may exercise its discretion as to the mode of execution and the courts will not scrutinize the action of the council unless the exercise of its discretion is arbitrary, capricious or so unreasonable as to indicate a gross abuse thereof. (*Miller* v. *Boyle,* 43 Cal. App. 39 [184 Pac. 421]; 18 Cal. Jur., p. 901 et seq.)

In the first place we are not persuaded that the statement of the power in the charter does not contemplate within itself the mode of its execution, to the extent, at least, that the fund provided should be a fund maintained by the city directly, rather than indirectly through a contract of insurance whereby a third party discharges the city's obligations in that respect from its general assets or funds. The course adopted by the city is not the providing of a fund as contemplated by the framers of the charter. Provisions for funds for various purposes are common in municipal affairs and it is usually understood that such funds are maintained on deposit as a direct credit to the municipality to be expended by the city for the purpose or purposes designated. There should be no different meaning attached to the language used in the present instance without some express indication otherwise from the provisions of the charter. We feel impelled to conclude that the power conferred on the city by section 58 of article V of the charter does not include by implication the power to devote a fund, created and maintained as plainly contemplated by the charter provision, to the payment of premiums on a contract of insurance under which the insurer and not the city is, in effect, to discharge the city's obligation to disburse the funds for pension and relief.

It therefore becomes unnecessary to determine the second phase of the question whether, assuming a choice of method

was open to the city in the respect claimed, the providing of the fund by this particular insurance contract was an abuse of its power. A great deal has been said of the factor of safety assured by the adoption of the proposed method, and of the stability of the particular insurance company involved. Assuming to be true all that is contended for in this connection, such considerations might be persuasive only in the exercise of power, but not in the absence of it.

No authority has been presented in which the underwriting by insurance companies of a similar obligation has been approved. In the only case in which similar facts were involved, the exercise of the mode attempted was held to be beyond the power conferred upon the city. (*Frisbee* v. *O'Connor*, 119 Cal. App. 601 [7 Pac. (2d) 316].) It is urged that that case is not in point because the city there involved, the city of Beverly Hills, was a city of the sixth class which is governed by general laws, and does not control in cases like the present where the city is governed under a freeholders' charter. Nevertheless, even assuming the provision for a municipal pension fund or system to be a municipal affair (18 Cal. Jur. 787), the principles of construction stated in that case with reference to the express and implied powers of the city are applicable here and compel a reversal of the judgment. (1 Dillon, Municipal Corporations, 5th ed., pp. 448–450; 1 McQuillin, Municipal Corporations, 2d ed., secs. 373, 377, 386; *San Francisco* v. *Boyle*, 195 Cal. 426, 433, 434 [233 Pac. 965]; 18 Cal. Jur., p. 800 et seq.)

The judgment is reversed.

Rehearing denied.