[S. F. No. 15949. In Bank.—October 26, 1939.]

WEST COAST ADVERTISING COMPANY (a Corporation), Respondent, v. THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Appellant.

Glensor & Schofield for Respondent.

Harry C. Clausen, Hartley F. Peart, Howard Hassard, Harry G. Henderson, Rufus H. Kimball, Simeon E. Sheffey and Pillsbury, Madison & Sutro, as *Amici Curiae*, on Behalf of Respondent.

SHENK, J.—The plaintiff sued the City and County of San Francisco to recover license taxes paid during the years 1933 to 1936, inclusive. The judgment was for the plaintiff, and the defendant has appealed.

During the period involved, the plaintiff was engaged in the business of outdoor advertising, as defined in ordinance No. 4059 (new series) adopted by the board of supervisors of the city and county and approved by the mayor in 1917. Pursuant to that ordinance as amended in 1920 by ordinance No. 5133 (new series), and ordinance No. 5132 (new series), entitled "An Ordinance imposing License Taxes on Certain Businesses, Callings, Trades, or employments within the City and County of San Francisco", as adopted in 1920, the plaintiff paid each quarter-yearly license fee of $90. On the trial of the action it was stipulated and found by the court that the tax paid by the plaintiff was a tax imposed for revenue only. The judgment for the plaintiff was based on the trial court's conclusion that the charter of the City and County of San Francisco does not authorize the imposition and collection of license taxes for revenue purposes.

On this appeal the defendant concedes that the charter provisions do not purport in express words to confer a grant of power upon the city to impose license taxes for revenue purposes. But the city contends that the present charter, which contains the provisions permitted by sections 6 and 8 of article XI of the state Constitution as amended in 1914, is an instrument of restrictions and limitations only; that no restriction appears therein upon the exercise of the taxing power evidenced by the ordinances here involved; therefore that the power may so be exercised without an express grant thereof in the charter.

The plaintiff relies in part upon the general state policy reflected in sections 3366 and 4041.14 of the Political Code to the effect that legislative bodies of counties and cities shall, for purposes of regulation and not otherwise, have power to license all and every kind of business not prohibited

by law. It contends that because of those general laws and state policy, a specific grant in the present charter is necessary in order to confer taxing power for revenue purposes upon the City and County of San Francisco. In this connection the plaintiff cites *City and County of San Francisco* v. *Boyle,* 195 Cal. 426 [233 Pac. 965], which states the general rule that municipal corporations have only the powers expressly conferred and such as are necessarily incident to those expressly granted or essential to the declared objects and purposes of the corporation.

Prior to 1914 the Constitution (art. XI, sec. 6) provided that cities and towns, except in municipal affairs, should be subject to and be controlled by general laws. The defendant's charter of 1899 was framed in conformity with the opinion then prevailing that a city charter must contain a specific grant of power with reference to its conduct of municipal affairs. That charter (subd. 15, sec. 1, chap. 2, art. II, Stats. 1899, pp. 241, 249) contained an express grant of power to levy license taxes for revenue purposes. (*In re Higgins,* 50 Cal. App. 533 [195 Pac. 740].) The validity of ordinance No. 5132 (new series), above mentioned, as a measure imposing occupational license taxes for revenue purposes, was upheld in the Higgins case.

The amendment of section 6 of article XI of the Constitution, adopted in 1914, provided that cities and towns theretofore or thereafter organized, by creating new charters or by amending existing charters, could become empowered "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters, they shall be subject to and controlled by general laws". At the same time the following sentence was included in an amendment to section 8 (providing the manner whereby a city having a designated population may frame and adopt a charter for its own government) : "It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to general laws."

The history and the effect of the successive constitutional changes culminating in the privilege of autonomous rule for municipalities as it was extended by the 1914 amendments, has been traced and analyzed in various decisions of the courts and in special articles. (See *Fragley* v. *Phelan*, 126 Cal. 383 [58 Pac. 923]; *Ex parte Helm*, 143 Cal. 553 [77 Pac. 453]; *Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351]; *City of Long Beach* v. *Lisenby*, 175 Cal. 575 [166 Pac. 333]; *City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 Pac. (2d) 745]; *Bank* v. *Bell*, 62 Cal. App. 320 [217 Pac. 538]; 11 Cal. Law Rev., pp. 91, 446.)

Since the 1914 amendments to the Constitution San Francisco has adopted a new charter, called the charter of 1932. (Stats. 1931, pp. 2973, 2978.) Section 2 of that charter contains the following provision: ''The city and county may make and enforce all laws, ordinances and regulations necessary, convenient or incidental to the exercise of all rights and powers in respect to its affairs, officers and employees, and shall have all the rights and powers appropriate to a county, a city, and a city and county, subject only to the restrictions and limitations provided in this charter, . . . The specification or enumeration in this charter of particular powers shall not be exclusive. The exercise of all rights and powers of the city and county when not prescribed in this charter shall be as provided by ordinance or resolution of the board of supervisors.'' That section also provides that all ordinances or resolutions in force at the effective date of the charter and not inconsistent therewith shall continue in force until amended or repealed.

Section 24 of said charter, treating of ''permits and inspections'', is the section which states the limitations and restrictions upon the power to issue licenses. The pertinent portions of that section are as follows:

''The board of supervisors shall regulate, by ordinance, the issuance and revocation of licenses and permits for the use of, obstruction of · or encroachment on public streets and places, . . . ;. and for the operation of business or privileges which affect the health, fire-prevention, fire-fighting, crime, policing, welfare or zoning conditions of or in the city and county; and for such other matters as the board of supervisors may deem advisable. Such ordinance shall fix the fees or licenses to be charged, which shall be not less than

the cost to the city and county of regulation and inspection; . . . The chief of police in the performance of police duties shall have power to examine at any time the books and premises of pawnbrokers, peddlers, junk and second-hand dealers, auctioneers and other businesses designated by the board of supervisors, and the tax collector shall have power to examine the books of any business for which a license is issued and a fee charged on the basis of the receipts of such business, . . .

"No license tax shall be imposed on any seller or manufacturer of goods, wares or merchandise operating at a fixed place of business in the city and county, except such as require permits or licenses in accordance with or under authority of any local health, sanitary or other ordinance under the police power."

As noted, it is the plaintiff's contention that inasmuch as the foregoing section does not contain an express provision granting the right to impose license taxes for revenue purposes, and because, so it is claimed, a charter is a grant of power, the right to levy such taxes may not be implied.

It is now established by a line of decisions of the courts of this state that a city which has availed itself of the provisions of the Constitution as amended in 1914 has full control over its municipal affairs unaffected by general laws on the same subject-matters, and that it has such control whether or not its charter specifically provides for the particular power sought to be exercised, so long as the power is exercised within the limitations or restrictions placed in the charter. (*Stege* v. *City of Richmond,* 194 Cal. 305 [228 Pac. 461]; *Brougher* v. *Board of Public Works,* 205 Cal. 426 [271 Pac. 487]; *Butterworth* v. *Boyd,* 12 Cal. (2d) 140 [82 Pac. (2d) 434]; *Bank* v. *Bell, supra.*) As stated in *In re Galusha,* 184 Cal. 697, at page 700 [195 Pac. 406]. "The question, then, is not whether the charter grants the power to impose the tax, but whether it prohibits the tax, . . . " Also in *In re Nowak,* 184 Cal. 701, 704 [195 Pac. 402], it was said: "The net result . . . is that, as to municipal affairs, the charter, instead of being a grant of power, is, in effect, a limitation of powers, and, the imposition of the tax for revenue purposes being strictly a municipal affair, the city has the power to impose that tax unless the power was taken from it by the charter itself. [Citing cases.]"

■ The foregoing cited cases leave no doubt that such a charter is no longer a grant of powers, but is rather an instrument which accepts the privilege granted by the Constitution of complete autonomous rule with respect to municipal affairs, and which otherwise serves merely to specify the limitations and restrictions upon the exercise of the powers so granted and accepted. Therefore any such power not expressly forbidden may be exercised by the municipality, and any limitations upon its exercise are those only which have been specified in the charter.

The decisions relied upon by the plaintiff such as *City and County of San Francisco* v. *Boyle, supra, Whitmore* v. *Brown,* 207 Cal. 473 [279 Pac. 447], *Fessier* v. *Campbell,* 2 Cal. (2d) 638 [42 Pac. (2d) 1020], *Griffin* v. *City of Los Angeles,* 134 Cal. App. 763 [26 Pac. (2d) 655], and *Richards* v. *Wheeler,* 10 Cal. App. (2d) 108 [51 Pac. (2d) 436], were concerned either with charters which were framed as specific grants of power, rather than with limitations upon recognized existing powers; or, if the latter, the question was whether the power was one relating to a strictly municipal affair or was one controlled by general laws. For instance, in the case of *Griffin* v. *City of Los Angeles, supra,* it was recognized (p. 769) that "the powers conferred upon the City of Los Angeles in municipal affairs are subject to charter restrictions only, and the enumerations therein of powers conferred do not constitute limitations thereon for such purposes". Likewise, in all the cases where the question of the effect of the 1914 amendments has been considered, the same recognition has uniformly been present.

■ The plaintiff also places special reliance upon the case of *City of Pasadena* v. *Charleville, supra.* It urges the conclusion from the decision in that case that the present charter of the City and County of San Francisco was not drawn as an acceptance of the general grant contained in the amended sections of article XI of the Constitution, and as an instrument of limitations and restrictions; but that it was framed as a grant of express powers. By an amendment to its charter in 1923 the city of Pasadena had availed itself of the privilege extended by sections 6 and 8 of article XI as amended. In that case it was said: "But it is not necessary that the charter specifically legislate on the subject. In order to remove the city's municipal

affairs from the control of general laws it is sufficient if the city has availed itself of the offer extended to it by the Constitution as amended in 1914 and has incorporated in its charter an acceptance of the privilege tendered. . . . [Citing cases.] Where in the one case the charter specifically legislates upon the subject it is deemed a grant of power; and where, on the other hand, the charter in general terms accepts the offer extended by the Constitution, the enumeration of powers is unnecessary and the general language of the acceptance becomes a limitation of the power of the city and is all-embracing so far as the removal of the municipal affairs of the city from the control of the legislature is concerned." The court then called attention to the amendment to the charter, and stated: "This amendment was adopted in strict conformity with the amendment of section 6 of article XI of the Constitution in 1914. The charter so amended is the fundamental law of the city, subject only, as to its municipal affairs, to the restrictions and limitations of the charter itself, and, of course, subject to the provisions of the Constitution which is the authority for its creation. . . . In none of the cases in this state has it been held that an enactment of the legislature was controlling as to a municipal affair of a city which had in its freeholders' charter legislated on the subject or had availed itself by charter provisions of the offer of further autonomy extended by the 1914 amendment to the Constitution." It is obvious from the language used by the court in that case that there is no support therein for the conclusion drawn by the plaintiff, namely, that if the charter, which has adopted the privilege extended by the amendment of 1914, purports to enumerate some of the powers conferred upon the city, it is thereby reconverted into the type of instrument which it was the intention of the amendment to render unnecessary. On the contrary the courts have given effect to the obvious purpose of the amendment and have held, as noted, that the enumeration of some powers does not exclude the exercise of powers not enumerated except as limited by the charter and the Constitution. There is no contrary implication to be drawn from the decision in the case of *Pasadena* v. *Charleville, supra.* Furthermore, by the quoted provisions from section 2, the defendant has accepted the grant of such general powers and has also expressly negatived the effect contended for by the plaintiff by providing that the enumeration of

specific powers shall not be exclusive, and by reserving the right to exercise powers not enumerated.

No doubt is entertained upon the proposition that the levy of taxes by a municipality for revenue purposes, including license taxes, is strictly a municipal affair. (*Ex parte Braun,* 141 Cal. 204 [74 Pac. 780]; *Ex parte Helm, supra; Ex parte Lemon,* 143 Cal. 558 [77 Pac. 455, 65 L. R. A. 946]; *Ex parte Jackson,* 143 Cal. 564 [77 Pac. 457]; *Trebilcox* v. *City of Sacramento,* 91 Cal. App. 257, 265 [266 Pac. 1015].) As such a municipal affair it must be deemed to have been included within the special grant and privilege tendered by the constitutional amendment in 1914 and later accepted by the city. A statement made in *Ex parte Braun, supra,* at page 211, is just as applicable since the 1914 amendment as it was prior thereto. The statement follows: "It is of course true that the local power of taxation, like all other local powers, must have its origin in a grant by the state, and that it may at all times be controlled by the sovereign power. But it does not follow that the legislative department of the state may so control it. In the absence of constitutional provisions relating to the subject, the legislative department would necessarily have unlimited sway, and could, for the state, confer, modify, or withdraw the power and prescribe such regulations as it saw fit for its exercise. The state Constitution is, however, the highest expression of the will of the people of the state, and so far as it speaks, represents the state. . . . The power of cities operating under freeholders' charters to raise money by taxation for municipal purposes does not find its source in any grant by the legislature. There is no enactment of the legislature purporting to vest such authority in such cities. Such power has been directly granted by the people of the state by the provisions of the state Constitution."

It follows that if the charter does not contain any limitation or restriction upon the power of the City of San Francisco to levy license taxes for revenue purposes, such taxes may legally be imposed and collected. An analysis of the pertinent charter provisions discloses that the framers thereof were careful to preserve rather than to prohibit the right to exercise the power here asserted by the city. There is no provision in the charter which denies the city's right to levy license taxes for revenue purposes on the business of the plaintiff herein. The plaintiff refers to the clause,

"and for such other matters as the board of supervisors may deem advisable", appearing in the language of section 24 which places in the board the general regulatory power to issue and revoke licenses and permits. It contends that included within this quoted phrase only such other matters were contemplated as were similar and relevant to those particularized, namely, such as pertained to the exercise of the police power; and further that the inclusion of only such related purposes had the effect of restricting the power to issue licenses and permits to those issued for regulatory as distinguished from revenue purposes. However, it is manifest from the remaining language of the section that any particularization inferable from the quoted phrase was not intended to have the effect urged by the plaintiff. The concluding paragraph of the section singles out only sellers or manufacturers of goods, wares or merchandise operating at a fixed place of business upon whom license taxes may not be imposed except for "health, sanitary or other ordinance enacted under the police power". As to all other businesses, including that of the plaintiff herein, no restriction appears upon the right of the city to impose license taxes for revenue purposes.

 Further rules of construction invoked by the plaintiff are inappropriate here. The contentions in respect to such rules presuppose and are based upon the assumption that the charter is a grant of enumerated powers, rather than an instrument of limitations and restrictions upon the exercise of existing powers relating to municipal affairs. Inasmuch as it is the latter, the rule that taxing statutes must be strictly construed against the taxing power cannot, under the authorities hereinabove cited, have the effect to restrict the city's power to exercise the right except to the extent that such right is expressly limited by the provisions of the charter. Also, inasmuch as the instrument is one of limitations and restrictions only, the rule *expressio unius est exclusio alterius* would not operate as contended by the plaintiff. The only express limitation upon the right to impose license taxes for revenue purposes having been directed to include certain specified businesses, we may not infer a limitation upon the exercise of that power in respect to businesses not mentioned. Similar rules of construction were rejected in *In re Nowak* (*supra,* at p. 707). Even if section 24 of the charter should, according to the plaintiff's view,

be deemed an enumeration of powers, the provision of section 2 (that the specification or enumeration of particular powers shall not be exclusive), would preclude the application of such rules with the effect urged by the plaintiff.

We therefore conclude that the Constitution and not the charter is the source of the city's power to levy taxes; that pursuant to the constitutional grant which has been accepted by the city, it has acquired complete control over its municipal affairs, including the power to levy license taxes for revenue purposes; that the restrictions on the exercise of that power are only the limitations and restrictions appearing in the Constitution and in the charter itself; and that inasmuch as the charter contains no express limitation upon the power to impose license taxes for revenue purposes upon the class of business conducted by the plaintiff herein, the taxes paid by it and herein sought to be recovered were not illegally imposed. It is not contended that the tax ordinance violates any provision of the Constitution.

The foregoing conclusion renders it unnecessary to discuss other questions presented.

The judgment is reversed.

Curtis, J., Waste, C. J., Carter, J., Houser, J., and Gibson, J., concurred.